UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TEDREKA ADAMS,

                           Plaintiff,

        v.

CONTINENTAL SERVICE GROUP, LLC
*d/b/a Conserve*,

                           Defendant.
_____

DECISION & ORDER

23-CV-6396EAW

On July 14, 2023, plaintiff Tedreka Adams, represented by Daniel Zemel, Esq., of Zemel Law, LLC, commenced this action against Continental Service Group, LLC, doing business as Conserve ("Conserve"), asserting a claim pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Docket # 1). Currently pending is a motion filed by Zemel to withdraw as counsel for Adams. (Docket # 13). Also pending is a motion for attorneys' fees filed by Conserve. (Docket # 18).

**FACTUAL BACKGROUND**

On February 19, 2024, Conserve served a Notice of Deposition on Adams by mailing and emailing the notice to Zemel, her counsel of record. (Docket ## 18-1 at ¶ 3; 18-2). The deposition was noticed to occur on March 20, 2024 at 2:00 p.m. (Docket # 18-2). On March 15, 2024, Brendan Little, Esq., counsel for Conserve, sent an email to Zemel to confirm the deposition. (Docket ## 18-1 at ¶ 4; 18-3 at 7). On March 18, 2024, Zemel responded and indicated that he would attend remotely via Zoom and that he was "waiting to hear from [his]

client on confirmation." (Docket # 18-3 at 7). The following day, Zemel emailed Little and represented that he had "[f]inally heard back from [his] client and she can't make it tomorrow." (Docket ## 18-1 at ¶ 6; 18-3 at 6). Zemel indicated that he would provide alternative dates and times. (Docket # 18-3 at 6).

Little replied, expressing concerns regarding rescheduling the deposition in view of the court-ordered deadline of March 28, 2024 for completion of fact discovery. (Docket ## 18-1 at ¶ 7; 18-3 at 5). Little offered to conduct the deposition on March 22, 2024, in order to accommodate Adams's schedule. (Docket ## 18-1 at ¶ 8; 18-3 at 5). He requested that Zemel let him know whether the deposition would take place as noticed or on March 22. (Docket # 18-3 at 5). Zemel responded that he was "reaching out" to his client and indicated that he was willing to extend the court-ordered deadline. (*Id.*).

In response, Little reminded Zemel that the deposition notice had been served a month earlier and that Zemel had only alerted him to a potential scheduling conflict when he sought to confirm the deposition. (*Id.* at 4). Little indicated that, due to the imminent discovery deadline, he needed to depose Adams as scheduled or on the alternative date of March 22. (*Id.*). After receiving no response to that communication, Little emailed Zemel on March 19 and indicated that he would "move forward" with the deposition the following day as scheduled in the notice. (*Id.* at 3). Zemel responded, "I'm not sure who you are moving forward with, but I will get you new dates when my client is available as I mentioned yesterday." (*Id.*). Little replied that defendant would be "forced to take a non-appearance and seek court intervention." (*Id.* at 2).

On March 20, 2024, Little appeared for the deposition; plaintiff and Zemel failed to appear. (Docket ## 18-1 at ¶ 9; 18-4). The following day, Little filed a letter with the Court

2

requesting an extension of the fact discovery deadline for the purpose of taking Adams's deposition. (Docket # 12). Little also requested an order directing Adams's appearance at a rescheduled deposition and awarding attorneys' fees and costs on the grounds of Adams's non-appearance. (*Id.*). The Court granted the requested extension and instructed Conserve to file a formal motion if it continued to seek fees and costs in connection with Adams's failure to appear. (Docket # 14).

On March 25, 2024, Zemel filed a motion to withdraw as counsel for Adams, unaccompanied by any affirmation or affidavit. (Docket # 13). The motion stated that Adams had retained Credit Repair Lawyers of America ("CRLA") to represent her in this action, that CRLA had retained Zemel to serve as local counsel, and that Zemel had entered a notice of appearance on behalf of Adams.[1] (*Id.* at 1). Zemel represented that Adams had failed repeatedly to respond to attempts to communicate with her, and he requested that he be relieved as her counsel and that the case be stayed for thirty days to permit her time to retain new counsel. (*Id.* at 1-2).

On April 3, 2024, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, Conserve filed the pending motion seeking attorneys' fees and costs (in the amount of $3,879.68) on the grounds that Adams failed to attend her noticed deposition. (Docket # 18-1 at ¶ 18). Conserve opposes Zemel's motion to withdraw, maintaining that the Court should defer deciding that motion until after it determines whether Conserve is entitled to attorneys' fees and costs incurred in connection with Adams's deposition. (Docket # 26 at 3-4).

The Court held oral argument on the motions on May 7, 2024. (Docket # 32). During the proceedings, Zemel was unable to answer several important questions posed by the

---

[1] CRLA has never entered a notice of appearance in this matter and is not listed as an attorney of record for the plaintiff.

Court concerning counsel's communications with Adams and offered conflicting representations concerning the last time anyone with his office or with CRLA had received any communication from her.[2] Zemel began the oral argument by representing that the last communication from Adams was received in December 2023, and he affirmed that his March 19, 2024 email to Little – insofar as it suggested that he had communicated with Adams and learned that she was unavailable for the deposition scheduled for March 20 – was inaccurate.

According to Zemel, the majority of communications to or with Adams occurred with his office staff or CRLA personnel, and Zemel was copied on some but not all of the communications. Zemel represented that he was copied on a January 2024 email and a March 21, 2024 email to Adams, neither of which received any response. Zemel reiterated that at the end of 2023 Adams stopped replying to communications from him or his "co-counsel" at CRLA and that they did not receive any communications from her thereafter.[3] Zemel did not know whether Adams had been sent a copy of the deposition notice or otherwise informed of the noticed deposition.

Later during the oral argument, Zemel reviewed an internal office communication in which he was advised that plaintiff was not available for the deposition and that new dates would be obtained from the plaintiff. According to Zemel, he interpreted that internal communication to mean that plaintiff had indeed informed someone in one of the law offices that she was unavailable for the scheduled deposition. It was this communication, Zemel surmised,

---

[2] Zemel also offered conflicting reasons for the inability to proceed with the deposition as scheduled on March 20. Initially, he represented to the Court that it was he – not Adams – who had a scheduling conflict that day. It was only after the Court directed Zemel's attention to the scheduling communications between Zemel and Little that Zemel indicated that it was Adams who was unavailable.

[3] At a subsequent point during argument, Zemel suggested that the last communication from Adams may have been on January 1, 2024, rather than in December 2023.

4

that must have been the basis of his email to Little representing, "[f]inally heard back from client and she can't make it tomorrow."

Considering Zemel's inability to answer basic factual questions about communications to and from his client, and the inconsistent representations concerning when Adams had last communicated with her attorneys or their staff, the Court reserved decision on the pending motions and directed Zemel to file a supplemental submission providing more factual detail about the history of the communications between Adams and her counsel. (Docket # 30). Significantly, as the Court explained at oral argument, it sought additional facts regarding any communications with Adams about her deposition, including whether she was ever informed of the scheduled deposition. Additionally, because Zemel's motion to withdraw was premised upon the purported lack of communication between counsel and Adams, the Court requested additional facts concerning the breakdown in communication, including how long the lapse in communication had lasted, the efforts made to reestablish communication, and the nature of any response from Adams, including whether Adams had provided any explanation for her failure to communicate or had indicated that she was no longer interested in pursuing her claims. Specifically, the Court directed Zemel to specify when the last communication received from Adams occurred and to describe each subsequent communication sent to Adams.

On May 21, 2024, Zemel filed a supplemental submission consisting of his own declaration and the declaration of Carl Schwartz, an associate attorney employed by CRLA. (Docket ## 33, 33-1). In his declaration, Zemel represents that he "relied on [CRLA] to handle direct communications with [Adams]" and has not "received any response from [Adams] to [his] communications since November 2023." (Docket # 33 at ¶¶ 2, 4). Zemel further represents that he misunderstood an internal email communication dated March 19, 2024, which caused him to

5

believe that Adams had informed either his office or CRLA that she was not available to attend her deposition on March 20, 2024.  (*Id.* at ¶ 5).  In fact, Zemel now acknowledges, Adams never indicated whether she was available for the noticed deposition because she did not respond to any communications sent to her "throughout" March 2024.  (*Id.*).

Schwartz represents that he is employed by CRLA, a law firm retained by Adams to represent her in connection with the claims asserted in this case.  (Docket # 33-1 at ¶¶ 2-3).  According to Schwartz, CRLA later retained Zemel Law LLC to prosecute Adams's claims in this Court.  (*Id.* at ¶ 4).  Schwartz represents that CRLA communicated with Adams by telephone and email and that Adams previously responded to CRLA's attorneys or staff through both means.  (*Id.* at ¶¶ 6-7).  According to Schwartz, CRLA contacted Adams on "numerous" occasions during the litigation and on "several occasions" Adams did not respond to CRLA's communications.  (*Id.* at ¶ 8).

Specifically, Adams failed to reply to communications on the following dates: October 24, 2023 (email), November 1, 2023 (voicemail), December 18, 2023 (email and voicemail), December 21, 2023 (voicemail), February 26, 2024 (voicemail), and March 19, 2024 (email).[4]  (*Id.* at ¶¶ 9-15).  Schwartz represents that he personally telephoned Adams on February 26, 2024, and left her a voicemail "concerning the deposition date and time" and left her another voicemail on March 19, 2024 "concerning the deposition."  (*Id.* at ¶¶ 14-15).  According to Schwartz, the "last contact attempt which [Adams] responded to was April 16, 2024."  (*Id.* at ¶¶ 16-17).  He provided no further information about the April 16, 2024 communication.  (*Id.*).  Nor did he provide information about the "numerous" instances in which Adams did communicate with CRLA.  (*Id.*).

---

[4] During oral argument, Zemel represented that an email had been sent to Adams on March 21, 2024, the day after the noticed deposition.  That email, if it in fact was transmitted, is not addressed in either Zemel's or Schwartz's declarations.

I.      **<u>Withdrawal of Counsel</u>**

Despite my direction to Zemel to provide additional facts to permit the Court to determine the extent to which communications between Adams and her counsel had deteriorated, the supplemental submission fails to provide sufficient facts to understand the communication history between Zemel and his client. According to Schwartz's declaration, Adams did not respond to several emails or voicemails during October, November and December 2023, and February and March 2024. While the declaration suggests that Adams failed to respond to particular communications, it does not identify or elaborate upon the communications that did take place between Adams and counsel (or their offices) during the course of the litigation. For example, it does not explain whether counsel was able to subsequently reach Adams following the identified dates on which she did not respond (as noted in the preceding paragraph) in order to address the issues they wished to discuss with her. In addition, although Zemel represents that he last heard from Adams in November 2023, his declaration does not make clear whether he ever attempted to contact her after that communication.

Particularly troubling to the Court is Schwartz's representation that he received a communication from Adams on April 16, 2024 – after the motion to withdraw was filed but before the oral argument on May 7, 2024. This representation is inconsistent with Zemel's representations made during the oral argument that, despite having served Adams with a copy of the motion by certified mail, there had been no communication from Adams since late December 2023 or early January 2024. Equally concerning is counsel's failure, despite the Court's instructions during the proceedings, to provide sufficient details regarding communications with Adams to permit it to evaluate whether her lack of communication with Zemel justifies his

withdrawal, such as the form of the communication and whether Adams indicated if she wished to continue pursuing her claims and/or to continue with representation by Zemel.

The limited information provided to the Court suggests that much of the communication difficulties between Adams and her counsel stem from the unusual and sometimes dysfunctional working relationship between CRLA and Zemel Law.  Both of these firms purport to represent Adams and thus are ethically bound to communicate with her and represent her interests.  Zemel, who is counsel of record in this matter, is responsible for staying in touch with his client so that he can ensure she attends to her litigation responsibilities, as well as being familiar with her relevant communications with others involved in her representation.  Tellingly, the unconventional relationship between Zemel, CRLA and their clients, and the problems that have resulted from it, have been the focus of similar motions by defendants and consternation by other courts.  *See Turner v. Trans Union, LLC*, 2019 WL 3926251, \*5 (S.D. Fla.) (recommending sanction of dismissal and reaffirming imposition of attorneys' fees after evidentiary hearing during which former counsel of record testified that he had "not communicated directly with [p]laintiff and that a non-responsive intermediary – CRLA – [was] surreptitiously involved in the case"; "[t]he undersigned finds it astounding that counsel has never spoken to [p]laintiff and, yet, has represented [p]laintiff in this case and has filed papers in this case on [p]laintiff's behalf"), *report and recommendation adopted by*, 2019 WL 3916952 (S.D. Fla.), and *amended in part by*, 2019 WL 5102451, \*1, 3 (S.D. Fla. 2019) ("poor representation by [p]laintiff's counsel, a lack of personal responsibility by [p]laintiff's counsel, and [p]laintiff's failure to participate in discovery have unnecessarily frustrated and delayed this case, thereby greatly taxing the [c]ourt's time and resources; . . . CRLA and Mr. Nitzkin [(the owner and president of CRLA)] cannot agree to represent a client, bring on another attorney to

assist, and then willfully turn a blind eye to the court proceedings"). *See also* cases cited *infra* at n.6.

Rather than demonstrating that Adams has displayed a pattern of non-responsiveness with counsel that justifies Zemel's withdrawal, the supplemental submission demonstrates that there were "numerous" communications between Adams and counsel and that counsel in fact received a communication from Adams after the motion to withdraw was filed. The fact that Adams and CRLA communicated in April 2024 was not disclosed to the Court before or at oral argument. Indeed, when it finally was, it was provided with little factual detail, thus raising more questions than answers.

On the record before the Court at this time, the Court is unable to conclude that withdrawal of counsel is warranted and Zemel's motion to withdraw **(Docket # 13)** is thus **DENIED**.

II.     **Attorneys' Fees**

I turn next to Conserve's request pursuant to Rule 37(d)(3) of the Federal Rules of Civil Procedure for reimbursement of attorneys' fees and costs in connection with Adams's failure to attend her noticed deposition. (Docket # 18). Conserve maintains that it properly noticed Adams's deposition for March 20, 2024, and that Adams unjustifiably failed to appear for the deposition, warranting reimbursement of its deposition-related fees and costs. (Docket # 18-6 at 4-8).

Adams opposes the motion on the grounds that Conserve unnecessarily incurred costs and fees by proceeding with the deposition despite knowing that she would not appear. (Docket # 27). According to Adams, Conserve should simply have canceled the deposition and requested a court-ordered extension of the fact discovery deadline. (*Id.* at 1-2).

9

In reply, while acknowledging that Zemel informed Conserve's counsel the day before the deposition that Adams was unavailable, Conserve contends that it was reasonable to appear for and be prepared to proceed with the deposition. (Docket # 29). As Conserve points out, the deadline for fact discovery was fast-approaching and plaintiff had not identified another date within that deadline on which her deposition could be conducted. (*Id.*). Further, Conserve maintains that an award of costs and fees against Zemel (as opposed to Adams) is warranted due to Zemel's failure to inform counsel for Conserve that he had not communicated with his client for months prior to the scheduled deposition. (Docket ## 26 at 3-4; 35 at 4). Additionally, Conserve seeks an additional award of attorneys' fees in connection with its counsel's appearance at the May 2024 oral argument, as well as the supplemental submission it filed in connection with these motions. (Docket # 35 at 9).[5]

Rule 37(d) of the Federal Rules of Civil Procedure authorizes the Court to order sanctions when "a party . . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i). "Pursuant to this Rule, a court may award a variety of sanctions but 'must' require the recalcitrant party or its attorney or both 'to pay the reasonable expenses, including attorney's fee, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) (quoting Fed. R. Civ. P. 37(d)(3)). In addition, "reasonable fees may include attorney's fees and costs in connection

---

[5] Conserve also seeks sanctions pursuant 28 U.S.C. § 1927 and this Court's inherent powers. (Docket # 35 at 4-6). Because Conserve did not seek sanctions pursuant to that authority until it filed its supplemental submission, I decline to consider awarding sanctions pursuant to either Section 1927 or this Court's inherent authority. *See Mantell v. Chassman*, 512 F. App'x 21, 23 (2d Cir. 2013) (summary order) (vacating sanctions awarded pursuant to Section 1927 where sanctions were sought pursuant to Rule 37 and where the district court did not provide a warning that it was considering imposing Section 1927 sanctions; "[d]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions").

10

with filing a motion for sanctions." *Burks v. Stickney*, 837 F. App'x 829, 833 (2d Cir. 2020) (summary order).

Here, the deposition was properly noticed to occur on March 20, 2024, and Adams failed to appear. The only conceivable dispute is whether Adams has demonstrated that her failure to appear was substantially justified; she has not. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. at 148 ("Rule 37 places the burden of proof on the disobedient party to show that [her] failure is justified or that special circumstances make an award of expenses unjust") (internal quotation omitted).

As an initial matter, I reject Adams's contention that her failure to appear was substantially justified because Little was informed that she would not appear and he nonetheless decided to proceed with the deposition. As Little noted, the court-ordered deadline for fact discovery was imminent and plaintiff had not provided any dates prior to the deadline for a rescheduled deposition. To the extent Adams was unable to attend on the noticed date, it was incumbent upon her – not Conserve or its counsel – to arrange an alternative solution, by either securing an extension of the discovery deadline and coordinating another date or seeking relief from the Court. *See Cairobe v. Zwicker & Assocs., P.C.*, 2023 WL 7458339, *6 (N.D. Ga.) ("the relevant question before the [c]ourt is not whether [d]efendant was substantially justified in pursuing [p]laintiff's deposition when it did . . . but rather, *whether [p]laintiff's nonappearance was substantially justified*[;] . . . if [p]laintiff had felt she was justified in not attending her deposition, the proper course would have been to file a motion for a protective order or arrange a conference with the [c]ourt") (quotations and brackets omitted), *report and recommendation adopted by*, 2023 WL 9852976 (N.D. Ga. 2023).

The record demonstrates that Little emailed the deposition notice to Zemel on February 20, 2024. At the time Zemel received the notice, he had not heard from his client for more than two months. Despite this, neither Zemel nor any CRLA attorneys made any immediate attempt to contact Adams. Rather, they waited approximately one week before even attempting to inform Adams that she had been noticed to appear for a deposition. According to Schwartz, on February 26, 2024, he left a voicemail for Adams "concerning the deposition date and time." There is nothing in the record to suggest that Zemel or CRLA ever provided Adams a copy of the deposition notice or advised her of the potential consequences of a failure to attend. Notably, neither Zemel nor CRLA made any other attempt to contact Adams concerning the deposition until March 19 – the day before the deposition was scheduled to occur.

In the meantime, Zemel made no effort to communicate to Little that he had lost contact with his client. Instead, he remained silent while Little continued to expend time and resources in defending Conserve against Adams's claims and in preparing for Adams's deposition. Astoundingly, when Little contacted Zemel on March 15 to confirm the deposition, Zemel made no effort to contact his client. Instead, he waited until March 18 to respond to Little, and, rather than explaining the situation, Zemel represented that he was "waiting to hear from [his] client" – a representation which, based on the record before the Court, lacked factual basis.

The following day, Zemel represented to Little that he had heard back from his client and that she was unavailable to attend. Zemel concedes that this representation was inaccurate, maintaining that it resulted from his misreading of an email from either his staff or CRLA. Of course, had Zemel not relied on others – including another law firm that has never entered a notice of appearance in this case – to communicate with his client on his behalf, such

12

miscommunications on important issues would be less likely to occur. In any event, his misrepresentation permitted the false impression that Adams remained in contact with her counsel and was actively prosecuting her claims.

On this record, I find that plaintiff has failed to show substantial justification for her non-appearance for the noticed deposition or that the imposition of sanctions would otherwise be unjust. Accordingly, I find an award of reasonable expenses caused by Adams's failure to attend the deposition is warranted pursuant to Rule 37(d) of the Federal Rules of Civil Procedure. *See John Wiley & Sons, Inc.*, 298 F.R.D. at 149 ("it is sufficient here that plaintiffs have shown that [defendant] improperly refused to appear for his deposition and caused plaintiffs to incur unnecessary expenses[;] . . . because defendants have failed to show substantial justification for their actions or that imposing sanctions would be otherwise unjust, we will award plaintiffs their reasonable expenses caused by [defendant's] failure to attend his deposition"); *Nevarez v. Hunt*, 2013 WL 1636669, *1 (W.D.N.Y. 2013) ("the imposition of costs is an appropriate sanction for plaintiff's unexcused failure to appear for his deposition, particularly since preparation for the deposition necessitated considerable time and effort") (internal quotations omitted).

Although I find that an award of reasonable expenses is warranted, there is little support in the record for finding Adams – as opposed to her counsel – responsible for her failure to appear. As noted above, the record does not establish that Zemel ever provided Adams a copy of the deposition notice or that she was ever counseled concerning the consequences of failing to appear. Indeed, the record demonstrates that Zemel made no attempts to contact Adams after receipt of the deposition notice, instead relying on CRLA's minimal efforts to communicate with his client on his behalf. Zemel's inaction – particularly given his client's apparent failure to

13

respond to other communications – caused Conserve to incur unnecessary costs and fees and resulted in inefficient and wasteful litigation before this Court.[6] On this record, I find that Zemel – not Adams –was primarily responsible for the failed deposition and should bear the attendant fees and costs.  *See Bacote v. Riverbay Corp.*, 2016 WL 7496139, *3 (S.D.N.Y. 2016) (ordering defendants' counsel to pay full fee award under Fed. R. Civ. P. 37 (d)(3) where the attorney made the decision causing the violation and the offending party "understandably relied upon his attorney's instructions"); *Eagle Nation Cycles v. City of Neenah*, 2016 WL 259321, *2 (E.D. Wis. 2016) ("because the fault seems to lie with the attorney for [p]laintiffs instead of them directly, he is to pay the entire amount assessed") (citing Fed. R. Civ. P. 37(d)(3)); *see also Kyros Law P.C. v. World Wrestling Entmt., Inc.*, 78 F.4th 532, 546 (2d Cir. 2023) ("[b]oth logic and the text of [Rule 37] dictate that a court may impose sanctions in a targeted way against the

---

[6] A review of reported decisions from courts throughout the country suggests to this Court that CRLA's and Zemel's conduct towards their client, opposing counsel and this Court in this case is, unfortunately, not atypical. *See Bell v. LVNV Funding LLC*, 2023 WL 7321487, *2-3 (D.N.J. 2023) (denying motion for attorneys' fees against Zemel Law and CRLA as unauthorized by statute where defendant sought fees after being unable to schedule plaintiff's deposition and Zemel sought to withdraw based upon "a complete breakdown in the relationship between [p]laintiff and her counsel"; "[d]efendant observed a pattern and practice of claims [being] brought under FDCPA without CRLA's investigation of the claims or involvement [of the] plaintiffs in investigating and bringing the claims") (collecting cases); *Cairobe v. Zwicker & Assocs., P.C.*, 2023 WL 7458339 at *7 (granting motion for sanctions for plaintiff's failure to attend deposition; "despite having the deposition notice for weeks, . . . CRLA did nothing to ensure that an attorney admitted to practice here was available to defend [p]laintiff's deposition"); *Valdes v. LVNV Funding LLC*, 2023 WL 7289743, *3 (M.D. Fla.) ("CRLA's continued pursuit of [plaintiff's] claim following her deposition was objectively reckless because counsel's conduct was beyond mere negligence and unreasonably and vexatiously multiplied the proceedings"), *report and recommendation adopted by*, 2023 WL 7212084 (M.D. Fla. 2023); *Dukes v. LVNV Funding, LLC*, 2023 WL 2574760, *5 (M.D. Fla.) (recommending award of attorneys' fees against CRLA for amounts incurred by defendant after plaintiff's deposition; "[a]t that point any reasonable attorney would have withdrawn or abandoned [p]laintiff's claim[;] . . . [i]nstead of doing so, . . . CRLA continued to pursue [p]laintiff's claim . . . and unreasonably and vexatiously multiplied the proceedings"), *report and recommendation adopted by*, 2023 WL 2571052 (M.D. Fla. 2023); *Taamilo v. Midland Credit Mgmt., Inc.*, 2021 WL 8083336, *3 (W.D. Tx.) ("[t]he court declines to recommend that Zemel be sanctioned in this matter[;] [a]t the same time, the court recognizes that Zemel's representation hardly serves as a commendable example of compliance with [] either [t]he Texas Lawyer's Creed or the spirit of this [d]istrict's local rules"), *report and recommendation adopted by*, 2021 WL 8083338 (W.D. Tx. 2021); *Harris v. Bureaus, Inc.*, 2021 WL 7708402, *4 (N.D. Ga. 2021) ("CRLA's conduct in this case was vexatious and unreasonable and resulted in an unnecessary multiplication of these proceedings"); *Reyes v. Receivables Performance Mgmt., LLC*, 2021 WL 930000, *4 n.4 (D. Conn. 2021) ("the [c]ourt observes that [Zemel] did not respond to [defendant's] allegation that [Zemel] acknowledged that he missed the disclosure deadline because it 'unfortunately came up too quickly'[;] . . . [t]his concession, especially in the context of the wider record, could be perceived as a tacit admission that counsel has been less than diligent in prosecuting discovery and, more troubling, less than candid with the [c]ourt").

actors whom it identifies as responsible for misconduct, whether those be the parties, their attorneys, or both"), *cert. denied*, 144 S. Ct. 822 (2024).

I turn next to the reasonableness of the fees requested by Conserve. In support of its request, Conserve's counsel has submitted affidavits, accompanied by summary billing records and associated costs for travel and a copy of the deposition transcript. (Docket ## 18-1; 18-4; 18-5; 35-1; 35-8). Conserve seeks a total of $6,786.68 in attorneys' fees and costs, consisting of $3,879.68 associated with Adams's failure to appear at her deposition and the filing of the motion for fees pursuant to Rule 37(d) (Docket # 18-1 at ¶¶ 17-18) and $2,907 associated with attending the oral argument on the motion and preparing defendant's supplemental submission in opposition to Zemel's motion to withdraw (Docket ## 35 at 9; 35-1 at ¶ 16).

Zemel maintains that Conserve's request is excessive on three separate grounds: (1) the hourly rate requested is unreasonable; (2) certain hours were unnecessary or fall outside the scope of the fees incurred as a result of Adams's failure to appear; and, (3) the number of hours for which reimbursement is sought is excessive. (Docket # 27 at 8-13).

An award of reasonable attorneys' fees is typically calculated using the lodestar methodology, which requires the court to determine counsel's reasonable hourly rate and multiply it by the reasonable number of hours expended by counsel; that figure may then be adjusted in the district court's discretion. *See*, *e.g.*, *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) ("the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence") (internal quotation omitted); *Agudath Israel of Am. v. Hochul*, 2023 WL 2637344, *1 (2d Cir. 2023) (summary order); *Tereschenko v. Karimi*, 2024 WL 3342759 (S.D.N.Y. 2024); *Grievson v. Rochester Psychiatric Ctr.*, 746 F. Supp. 2d 454, 460-61 (W.D.N.Y. 2010); *Jack v. Golden First Mortg. Corp.*, 2008 WL 2746314, *2 (E.D.N.Y. 2008);

15

*Moreno v. Empire City Subway Co.*, 2008 WL 793605, *2 (S.D.N.Y. 2008); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (lodestar figure is the "presumptively reasonable fee").

According to Conserve's counsel, time entries reflecting work relating to the sanctionable conduct total approximately 22.3 hours – 9.2 for himself and the remaining 13.1 for his associate. (Docket ## 18-1 at ¶¶ 14-18; 18-5; 35-1 at ¶¶ 16-18; 35-8). Counsel then multiplied those hours by an hourly rate of $320 for himself and $250 for his associate, resulting in total fees of $6,219.

Zemel objects to the hourly rates requested by Conserve's counsel, presumably on the grounds that they exceed the prevailing hourly rate in this area, but he does not suggest a more appropriate hourly rate. (Docket # 27 at 8-9). As reflected in Conserve's counsel's submission, he is an experienced practitioner with approximately seventeen years of experience, and his associate has approximately three years of experience. (Docket # 18-1 at ¶¶ 15-16). Based upon my familiarity with prevailing hourly rates in this district, I find that the proposed hourly rates are inflated and conclude that hourly rates of $300 for Little and $175 for his associate are more commensurate with prevailing local rates and are appropriate in this case. *See Houghtaling v. Downes*, 2023 WL 7304954, *10 (W.D.N.Y.) ("in the Western District of New York, the prevailing hourly rate for an experienced attorney . . . is typically no more than $300 per hour, while less experienced attorneys typically have rates of no more than $200 per hour") (internal quotation omitted), *report and recommendation adopted by*, 2023 WL 7301023 (W.D.N.Y. 2023); *Johnson v. New Bern Transp. Corp.*, 2020 WL 6736861, *4-5 (W.D.N.Y. 2020) ("[t]he [c]ourt finds the requested [$300] hourly rate and hours reasonable given recent case law in this district, [the attorney's] experience in consumer litigation, his work drafting the

pleadings and motions, and his efforts to resolve the case"); *Figueroa v. KK Sub II, LLC*, 2019 WL 1109864, *10 (W.D.N.Y. 2019) (setting hourly rates for experienced attorneys in this district between $250 and $300); *Taylor v. Delta-Sonic Car Wash Sys., Inc.*, 2017 WL 436045, *7 (W.D.N.Y. 2017) ("[a]n hourly rate of $250 for legal services . . . strikes this [c]ourt as both fair and reasonable given . . . the hourly rate employed by comparable attorneys here in the Western District"); *Costa v. Sears Home Improvement Prods., Inc.*, 212 F. Supp. 3d 412, 420 (W.D.N.Y. 2016) ("[t]he hourly rates generally allowed in this District . . . are in the range of $225-$250 for partner time or senior associate time, [and] $150-$175 for junior associate time").

With respect to the 12.1 hours expended in connection with attending the deposition and filing the motion for fees and costs, Zemel urges the Court to disallow certain hours as either unrelated to Adams's non-appearance or otherwise excessive or unnecessarily expended. (Docket # 27 at 12 (urging the Court that only 5.8 hours is reasonable)). For example, Zemel challenges time entries dated March 19 and 20 relating to time expended attempting to reschedule Adams's deposition. (*Id.*). Zemel also challenges time entries related to the preparation for and travel to Adams's deposition. (*Id.*). Finally, Zemel maintains that time expended reviewing or responding to his motion to withdraw is not properly compensable, as it is not related to the missed deposition. (*Id.*).

Having reviewed the entries, the challenged work clearly relates to attempts to accommodate Adams or to otherwise attend the deposition at which she failed to appear. With respect to the motion to withdraw, Conserve opposes the motion solely on the grounds that it maintains that its entitlement to fees for the failed deposition should be determined prior to permitting Zemel to withdraw. (Docket # 26). I find that the time is properly compensable and that deduction of these hours is not warranted.

17

Although not challenged by Zemel, I find that the majority of the hours expended in connection with drafting Conserve's response to Zemel's supplemental submission in support of his motion to withdraw (Docket # 35) are not properly compensable. As I indicated to Little during the oral argument, I permitted him the opportunity to respond to Zemel's supplemental submission solely for the purpose of addressing any additional factual information supplied by Zemel. I specifically cautioned Little that the Court did not require a rearticulation of the legal arguments already briefed in connection with the motion. The bulk of Conserve's responsive submission, however, consists of legal arguments already advanced in previous filings or relating to Conserve's request that the Court impose sanctions pursuant to Section 1927 or its inherent authority. Very little of the submission addresses the factual information supplied by Zemel in his supplemental submission. For this reason, I find that of the 10.2 hours of attorney time requested in connection with the oral argument and supplemental submission (Docket # 35-8), only 5.4 hours (May 7, 9, 21, 25, and 28 entries) are properly compensable.

Zemel also argues that the total hours worked are excessive. (Docket # 27 at 11-12). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from the award as unreasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "In calculating the number of reasonable hours, the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d. Cir. 1992) (internal quotation omitted). One way to accomplish that reduction is to evaluate the reasonableness of each individual time entry and to make reductions and exclusions as necessary. *See*, *e.g.*, *Pasternak v. Baines*, 2008 WL 2019812, *7 (W.D.N.Y. 2008); *Rich Prods. Corp. v. Impress Indus., Inc.*, 2008 WL 203020, *3 (W.D.N.Y. 2008). Another "practical means of

trimming the fat" is to apply a reasonable percentage reduction to the total number of hours requested. *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation omitted); *see, e.g.*, *Golub Corp. v. KLT Indus., Inc.*, 2020 WL 3254133, *6 (N.D.N.Y. 2020) (applying 30% reduction); *Simmonds v. New York City Dep't of Corr.*, 2008 WL 4303474, *8 (S.D.N.Y. 2008) (applying 40% reduction); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (applying 15% reduction); *Moreno v. Empire City Subway Co.*, 2008 WL 793605 at *6 (applying 15% reduction); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 167 (W.D.N.Y. 2005) (applying 20% reduction); *Elliott v. Bd. of Educ. of Rochester City Sch. Dist.*, 295 F. Supp. 2d 282, 286 (W.D.N.Y. 2003) (applying 10% reduction); *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 WL 21976400, *5 (S.D.N.Y.) (applying 20% reduction), *aff'd*, 2003 WL 22244953 (S.D.N.Y. 2003); *Sabatini v. Corning-Painted Post Area Sch. Dist.*, 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) (applying 15% reduction).

Plaintiffs' counsel has submitted a declaration affirming that 22.3 hours were expended in connection with Adams's deposition and the pending motions, 4.8 of which I have already determined should be excluded. The Court has carefully reviewed counsel's submission with respect to the remaining 17.5 hours and concludes, based upon my familiarity with these motions, that the number of hours for which reimbursement is sought should be reduced by ten percent to arrive at a reasonable number of hours. *See Elliott v. Bd. of Educ. of Rochester City Sch. Dist.*, 295 F. Supp. 2d at 286 (applying 10% reduction). Applying that ten percent reduction results in a total fee of $3,791.25 ((8.28 x $300) + (7.47 x $175)).

Conserve has also sought reimbursement in the amount of $567.68 for the costs of ordering the trial transcripts and for travel to the deposition. I find that this amount is reasonable


and should be reimbursed. Accordingly, I find that Conserve is entitled to be reimbursed in the amount of $4,358.93 in attorneys' fees and costs.

## CONCLUSION

For the reasons discussed above, Zemel's motion to withdraw **(Docket # 13)** is **DENIED without prejudice** and Conserve's motion for fees and costs **(Docket # 18)** is **GRANTED**. Zemel is directed to reimburse Conserve the sum of $4,358.93 in attorneys' fees and costs by no later than thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
        July 12, 2024